REEVES BROTHERS, INC. v. THE TOWN OF RUTHERFORDTON
AND THE TOWN OF RUTH

No. 64

(Filed 26 January 1973)

1. Taxation § 38— taxpayer's remedy

Ordinarily, absent sufficient allegations that a tax is illegal or levied for an illegal or unauthorized purpose, the taxpayer's exclusive remedy is to pay the tax and sue for a refund for such portion thereof as is excessive as provided by G.S. 105-381.

2. Taxation § 38— plant located in two municipalities — validity of agreement as to taxation by each municipality — declaratory judgment

Plaintiff, whose manufacturing plant is located partly in Rutherfordton and partly in Ruth, is entitled to have determined in a declaratory judgment action the validity of a 1966 agreement entered into by plaintiff, Rutherfordton and Ruth as to what properties of plaintiff are to be taxed by Rutherfordton and what properties are to be taxed by Ruth.

ON *certiorari* to review the decision of the Court of Appeals (15 N.C. App. 385, 190 S.E. 2d 345) which affirmed the judgment entered by *Falls, J.,* at the 10 January 1972 Session of RUTHERFORD Superior Court.

Plaintiff, a corporation, instituted this action on 11 June 1971 for a declaratory judgment and injunctive relief, alleging in substance, except when quoted, the facts narrated below.

The defendants are municipal corporations, both located in Rutherford County, North Carolina. Ruth adjoins Rutherfordton on Rutherfordton's northeast side.

In 1966, plaintiff owned and operated a small mill (Grace Plant) which was located partly in Rutherfordton and partly in Ruth. It was not large enough for economical operation. If the plant was to be enlarged, the only practical location for the new addition was to the northeast. In considering whether to close or to enlarge the plant, plaintiff's management determined that there was considerable uncertainty as to the location of the line dividing Rutherfordton and Ruth. Before proceeding with plant expansion, it was important that an agreement be reached by plaintiff and the two municipalities "to the end that there would be no controversy about which municipality taxed what portion of the completed mill, the goods in process, raw materials and machinery located therein," and that plaintiff "know that any relocation of goods in process, raw material, finished goods and machinery would not alter [its] tax liability to the two municipalities."

Plaintiff proceeded with its expansion program on the basis of an agreement entered into between it and the two municipalities. The terms of this agreement were embodied in identical resolutions adopted by the town council of each municipality on or about 12 March 1966.

Attached to the complaint as Exhibit A is a copy of the resolution adopted by the Town Council of Rutherfordton on 12 March 1966. The recitals include a statement that plaintiff's proposed addition "will be almost entirely in the Town of Ruth"; that, for reasons stated, plaintiff "could not go forward with the addition unless some method of apportioning taxes between Ruth and Rutherfordton is agreed upon"; and that both Rutherfordton and Ruth had agreed to the following solution of the problem: "FIRST: Rutherfordton will tax the present real estate, land and building now located in Rutherfordton; SECOND: Ruth will tax the land in Ruth and the new buildings to be added to the present plant; THIRD: The Stock in Process, Raw Materials, Finished Goods, Machines and Fixtures, and all other property of every kind and description located in the Grace Plant, (both

the old and the new addition), shall be returned on the Ruther-
ford County return, and when the County has fixed a taxable
value for this property, the Town of Rutherfordton will take
twenty (20%) percent of such value and levy its tax on that
amount; and the Town of Ruth will take eighty (80%) percent
of its value and levy its tax upon that amount. . . ."

In reliance upon this agreement, plaintiff expanded its
plant, spending "a very large sum of money"; and from 1966
through 1969 plaintiff was taxed and paid taxes to each town
as set forth in the resolutions.

Attached to the complaint as Exhibit B is a copy of a letter
dated 30 December 1969 in which Rutherfordton's attorney ad-
vised plaintiff that Rutherfordton repudiated completely the
1966 agreement and thereafter would levy taxes as it saw fit
without regard to its previous commitment.

In his letter of 30 December 1969, Rutherfordton's attorney
stated: "Please be advised that effective with 1970 the Town of
Rutherfordton will assess and levy taxes upon all the real prop-
erty of the Grace Plant which is *actually located* within the city
limits of the Town of Rutherfordton. It has been determined
that 60% of the building addition made in 1966 is situated
within the Rutherfordton city limits and, consequently, 60% of
the assessed value thereof is taxable by the Town of Rutherford-
ton and 40% by the Town of Ruth. This differs from your for-
mer practice of paying taxes on the entire value of the 1966
addition to the Town of Ruth.

"You are further advised that *all* tangible personal prop-
erty of the Grace Plant is taxable by the Town of Rutherford-
ton, and taxes will be levied accordingly for the year 1970. This
differs from your former practice of paying to the Town of
Rutherfordton taxes on 20% of the value thereof and paying
to the Town of Ruth taxes on 80% of the value thereof."

Plaintiff received from Rutherfordton a Tax Notice for
$13,844.99. In its reply thereto (Exhibit C), plaintiff stated the
tax shown thereon was incorrect and forwarded to Rutherford-
ton its check for $5,236.50, the amount due Rutherfordton de-
termined as provided in the resolutions of 12 March 1966. Ruth-
erfordton returned this $5,236.50 check to plaintiff.

Plaintiff received from Rutherfordton a tax statement dated
7 April 1971 (Exhibit D) in which plaintiff was advised that

it owed Rutherfordton as taxes for 1970 $13,832.29 plus 2% penalty.

Plaintiff having refused to pay the amount of the Tax Notice sent to it by Rutherfordton, Rutherfordton included in an advertisement (Exhibit E) of a sale to be held 14 June 1971, entitled "Rutherfordton Tax Collector's Sale—Sale of 1970 Taxes for the Town of Rutherfordton," the highest bidder "to receive Tax Sales Certificates as provided by law," which listed, among many other items, the following: "Reeves Bros. Inc. 1 lot & Imp. . . . . . . 13,832.33."

Attached to the complaint as Exhibit F is a copy of a letter dated 5 January 1970 from the Mayor and Commissioners of the Town of Ruth to the Mayor and Town Council of Rutherfordton in which Ruth takes the position that Rutherfordton's attempted repudiation of the agreement of 12 March 1966 is unacceptable, and that Ruth's position is in accord with that of plaintiff.

Ruth made no appearance herein by pleading or otherwise.

Rutherfordton filed a motion to dismiss under G.S. 1A-1, Rule 12(b), in which it asserted (1) that the complaint failed to state a claim against it on which relief could be granted, and (2) that the court lacked jurisdiction over the subject matter. Rutherfordton did not otherwise plead. Nor did it offer or tender evidence by affidavit or otherwise. The hearing before Judge Falls was on Rutherfordton's motion to dismiss.

Allowing Rutherfordton's motion, Judge Falls dismissed the action and taxed plaintiff with the costs. On plaintiff's appeal, this judgment was affirmed.

*Hamrick and Hamrick by J. Nat Hamrick for plaintiff appellant.*

*Owens and Arledge by A. Jervis Arledge and Hollis M. Owens, Jr., for defendant appellees.*

BOBBITT, Chief Justice.

The question presented by Rutherfordton's motion was and is whether the allegations of the complaint affirmatively disclose that plaintiff has no claim against Rutherfordton on which relief can be granted. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). In resolving this question, the only facts to be con-

sidered are those alleged by plaintiff. Accepting these facts as true, can Rutherfordton unilaterally repudiate the 1966 agreement and completely disregard it in taxing plaintiff's properties for 1970 and subsequent years?

The record before us shows no controversy with reference to the valuation placed upon plaintiff's properties. Whether plaintiff should have pursued administrative remedies in respect of the valuation thereof is not involved.

The statute codified as G.S. 105-406 in Volume 2D, Replacement 1965, was cited by Rutherfordton in support of its motion to dismiss. This statute in part provided: "Unless a tax or assessment, or some part thereof, be illegal or invalid, or be levied or assessed for an illegal or unauthorized purpose, no injunction shall be granted by any court or judge to restrain the collection thereof in whole or in part, nor to restrain the sale of any property for the nonpayment thereof. . . ." Although this statute was repealed, effective 1 July 1971, by Chapter 806, Section 3, Session Laws of 1971, the statute now codified as G.S. 105-379 in Volume 2D, Replacement 1972, which was enacted by Section 1 of Chapter 806, provides: "No court may enjoin the collection of any tax, the sale of any tax lien, or the sale of any property for nonpayment of any tax imposed under the authority of this Subchapter except upon a showing that the tax (or some part thereof) is illegal or levied for an illegal or unauthorized purpose." Decisions in accord are cited in *Redevelopment Comm. v. Guilford County*, 274 N.C. 585, 588-89, 164 S.E. 2d 476, 478-79 (1968).

[1] Ordinarily, absent sufficient allegations that the tax is illegal or levied for an illegal or unauthorized purpose, the taxpayer's exclusive remedy is to pay the tax and sue for a refund for such portion thereof as is excessive as provided in G.S. 105-381. The question is whether the 1970 tax Rutherfordton seeks to collect from plaintiff is a legal tax within the meaning of this rule.

The facts alleged in the complaint include those narrated below.

Plaintiff's properties were and are located partly in Rutherfordton and partly in Ruth. In 1966, plaintiff had to decide whether to close its plant or enlarge it by an addition extending farther into Ruth. There was considerable uncertainty as to the location of the dividing line between Rutherfordton and

Ruth. Too, there existed the specter of variations and uncertainty in plaintiff's ad valorem tax liability to Rutherfordton and to Ruth, respectively, on stock in process, raw materials, finished goods, machinery and fixtures, depending on the particular portion of plaintiff's plant in which these properties would be located on the listing date. To remove these uncertainties and thereby induce plaintiff to enlarge its plant, the 1966 agreement was entered into and was then considered by Rutherfordton as well as by plaintiff and Ruth to be for the best interest of all concerned.

Unquestionably, plaintiff owns properties which are taxable by Rutherfordton and other properties which are taxable by Ruth. Each could levy a valid tax upon the properties subject to its jurisdiction. The problem presented in 1966 and now is what properties are taxable by Rutherfordton and what properties are taxable by Ruth. Because of the factors stated above, the 1966 agreement was entered into as a practical and appropriate method of resolving the uncertainties.

While the factual situation here involved is one of first impression, we note that this Court has approved interlocutory injunctive relief in factual situations where each of two taxing units was asserting the right to tax identical (intangible) assets. *Sherrod v. Dawson,* 154 N.C. 525, 70 S.E. 739 (1911); *Barber v. Benson,* 200 N.C. 683, 158 S.E. 245 (1931).

Here plaintiff is confronted by Ruth's reliance upon the 1966 agreement and by Rutherfordton's attempted repudiation thereof. The key question is whether the 1966 agreement is valid. If so, Rutherfordton is not at liberty to tax plaintiff's properties otherwise than in a manner consistent with its terms.

In its motion to dismiss, Rutherfordton asserted that the 1966 agreement authorized by a resolution of its town council is illegal and void. However, nothing in the record indicates that this question was considered either by the Superior Court or by the Court of Appeals. Both decisions are based solely on the ground that the procedure provided by G.S. 105-381 is exclusive and therefore plaintiff could not maintain this action for a declaratory judgment.

[2] The Declaratory Judgment Act provides in part: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. . . ." G.S. 1-253. We

are of the opinion and hold that plaintiff is entitled to have determined in this action whether the 1966 agreement entered into between it, Rutherfordton and Ruth is valid and binding upon the parties thereto.

The record before us is skimpy. Whether a tax certificate sale was held on 14 June 1971 does not appear. Nothing in the record indicates whether a temporary restraining order was issued and in effect prior to the entry of judgment by Judge Falls. Is there evidence to support the factual statements contained in the letter from Rutherfordton's attorney purporting to repudiate the 1966 agreement? Has the Town Council of Rutherfordton undertaken by formal action to rescind its 1966 resolution or otherwise repudiate the 1966 agreement? Has plaintiff continued to pay taxes to Ruth in accordance with the 1966 agreement? Has the dividing line between Rutherfordton and Ruth been located with certainty? If so, what properties of plaintiff are now located in Rutherfordton and what properties are now located in Ruth? Present conditions as well as 1966 conditions may be relevant in determining whether the 1966 agreement if valid originally is presently binding upon the parties thereto.

In the event a restraining order is deemed necessary pending final decision in this action, it would seem appropriate that the plaintiff deposit funds or give bond in sufficient amount to cover its tax obligations to Rutherfordton and to Ruth whatever the decisions herein and in respect of the amount of taxes due each of these municipal corporations for 1970 and subsequent years.

It may be that Rutherfordton jumped the gun by its motion to dismiss. As the record now stands, the factual allegations of the complaint have not been challenged by answer or otherwise. It may be that Rutherfordton, either at trial or in support of a motion for summary judgment, can produce evidence contradictory of plaintiff's allegations and evidence of additional facts bearing upon the validity of the 1966 agreement.

In the present status of this case we express no opinion as to the validity of the 1966 agreement. We decide only that, upon the present record, plaintiff is entitled to have the validity thereof determined in this cause. Accordingly, the judgment of the Court of Appeals affirming the judgment of Judge Falls is reversed; and the cause is remanded to the Court of Appeals

with direction that it be remanded to the Superior Court of Rutherford County for further proceedings in accordance with this opinion.

Reversed and remanded.